285 So.2d 53 (1973)
The STATE of Florida, Appellant,
v.
Helen JOHNSON, a/K/a Sister Oka Johnson a/K/a Sister Oka, Appellee.
No. 72-998.
District Court of Appeal of Florida, Second District.
October 19, 1973.
Rehearing Denied December 4, 1973.
*54 Robert L. Shevin, Atty. Gen., Tallahassee, and Frank B. Kessler, Asst. Atty. Gen., Tampa, for appellant.
Paul B. Johnson of Gregory, Cours, Paniello & Johnson, Tampa, for appellee.
 
SCHWARTZ, ALAN R., Associate Judge.
The State appeals from a final order dismissing an amended information for grand larceny brought in the Hillsborough County Court of Record against the defendant-appellee. The trial judge dismissed the information because the State refused, despite a specific order to do so, to disclose to the defense the name of the person who had hired a private investigator who had, in turn, employed the man who was the complaining, and principal witness against the defendant.[1] Essentially because we conclude that the person in *55 question was not one who had, within the meaning of the then-applicable Rule of Criminal Procedure 3.220(e), 33 F.S.A.,
"information which may be relevant to the offense charged, and to any defense of the person charged with respect thereto,"[2]
and that the State was therefore not required to furnish his name, we reverse the order on appeal  and order the reinstatement of the information.
After the State had furnished the defense a list of witnesses pursuant to Rule 1.220(d), (e), the defense deposed one of the persons listed, a private investigator named Abe Namia. At his deposition, Namia revealed that he had employed and of course paid one Gerard Williams, the complaining witness against, and the alleged victim of "Sister" Johnson, the defendant; that he had hired Williams for the specific purpose of making a case against the "Sister"; and, most significantly in terms of the case before us, that he himself had been hired  and of course paid  specifically for the same purpose by a person whose name he adamantly refused to reveal. The defendant at once moved, again pursuant to Rule 3.220(e), to compel the State to reveal that name.
The State resisted the motion by an unsworn "traverse" which claimed that the person was a "confidential informant" whose name was privileged from discovery.[3] The trial judge, given abysmally little help by the State in support of its contention either legally or factually,[4] ruled that the quoted provision of Rule 3.220(e) applied, and that the "exception" to it created by the so-called "confidential informant" privilege did not. When the State declined to obey the consequent order to reveal the name, the information was dismissed.
Before this Court the parties have much mooted the question of whether the Mr. X involved in this case qualifies as a "confidential informant," a phrase which, like so many others, has no independent meaning of its own and takes substance only from the factual and legal context in which it is to be applied. On the one hand, Mr. X does not fit the commonly-thought-of definition of a confidential informant who, in exchange for remuneration, tips off a law enforcement agency that a suspect has committed or is likely to commit a crime. On the other, the showing, however belated, that he is engaged himself in investigations and meeting face-to-face with the defendant in a continuing inquiry into her conduct, and that his life would be in danger if his identity were to be revealed, evokes many of the policy reasons upon which our Courts have relied in protecting the names of "confidential informants." See, e.g., City of Miami v. Jones, Fla.App. 1964, 165 So.2d 775; Harrington v. State, Fla.App. 1959, 110 So.2d 495, 497, 498; Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. We need not, however, resolve this essentially semantic question because it seems clear that, however, he may be characterized or whatever he may be called, Mr. X was not shown by the defense to possess any information relevant either to the offense charged or any defense to that offense as required by Rule 3.220(e).
Mr. X was shown to have hired Namia who hired Williams; he was emphatically not shown to have known anything about whether Sister Johnson in fact stole money from Williams at the time and places *56 charged in the information or whether the Sister has some defense  alibi, entrapment, insanity, or the like  to that charge. He was somewhere else, doing something else, when the acts which allegedly established the crime took place, and "neither participated in nor was in any manner connected with the commission of the crime" for which appellee is charged. State v. Matney, Fla.App. 1970, 236 So.2d 166, 171. He could therefore not be considered a person within the meaning of the rule for the same reason that his identity would be protected were he in fact a pure blooded "confidential informer"  he has not been shown to have any information on the merits of the case. State v. Matney, supra; Compare Roviaro v. United States, supra, with United States v. Acosta, 5 Cir.1969, 411 F.2d 627, 630, and cases cited.
In arguing to the contrary, the defendant has collected numerous authorities[5] which hold that it is proper, and indeed necessary, to inquire, on cross-examination of a witness such as Williams or Namia, concerning such matters as whether he has been paid by his employer to prosecute or to give testimony against the defendant, the amount, duration and contingency of any such payment, and even any non-monetary interest of his employer in the defendant's prosecution. The purpose of permitting these inquiries, however, is only to establish bias or interest and thus affect the credibility of the substantive witness himself. Each of these matters would surely be a perfectly proper subject of cross-examination of Williams or Namia at the trial of this case.[6] But the fact that Mr. X has some knowledge of these questions which affect only possible impeachment or credibility does not bring his identity within a discovery rule, which as we interpret it, requires revelation only of those having knowledge as to substantive matters involved in the case.[7] The criminal discovery rules, no more than the civil ones, Collier v. McKesson, Fla.App. 1960, 121 So.2d 673, Hartstone Concrete Products Co. v. Ivancevich, Fla.App. 1967, 200 So.2d 234, 237, cannot be so broadly read. Cf. State v. Latimore, Fla.App., 284 So.2d 423, opinion filed August 21, 1973.
It is well established that the State has a privilege of non-disclosure in pretrial discovery unless the defense clearly establishes the existence of a right to a particular revelation. Treverrow v. State, Fla. 1967, 194 So.2d 250; State v. Smith, Fla. 1972, 260 So.2d 489. The defendant here did not establish such a right to the name of Mr. X. Since the judgment of dismissal below was based upon the State's failure to comply with an order with which it was therefore not required to comply, the judgment is reversed and the cause remended with directions to reinstate the amended information.
Reversed and remanded.
LILES, A.C.J., and McNULTY, J., concur.
NOTES
[1] Because the appeal is from the order dismissing the information, rather than the one requiring that the name be furnished, it is clear that State v. Smith, Fla. 1972, 260 So.2d 489, is not applicable and that the appeal properly lies. State v. Matney, Fla. App. 1970, 236 So.2d 166, squarely so holds on identical procedural facts. It is therefore unnecessary to consider the State's postoral argument motion to treat its appeal as a petition for certiorari.
[2] The same language has been incorporated into the now applicable, self-executing, Rule 3.220(a) (1) (i). See State v. Latimore, Fla. App., 284 So.2d 423, opinion filed August 21, 1973.
[3] So far as the record reveals, the only sworn or detailed factual showing to this effect came after the trial judge had ruled  in the absence of such a showing  that he was not a confidential informant and that his name must be revealed. Indeed, it came only after the State had declined to obey this order and the information had been dismissed.
[4] Ibid.
[5] E.g. Commonwealth v. Farrell, 1898, 187 Pa. 408, 41 A. 382, 384; Harwell v. State, 1914, 11 Ala.App. 188, 65 So. 702, 703; Wheeler v. United States, 1 Cir.1965, 351 F.2d 946, 947; State v. Carroll, 1892, 85 Iowa 1, 51 N.W. 1159; Harrison v. State, 1915, 12 Ala.App. 281, 68 So. 531.
[6] And it is pertinent to observe also, since we are concerned with the issue of essential fairness in interpreting the requirements of criminal discovery, State v. Crawford, Fla. 1972, 257 So.2d 898, 900, that we have been cited to no case which holds that the identity of the witness's employer is relevant even to the issue of his credibility so long as the nature of the employer's interest and the terms of the employment are revealed  as they would be in this case.
[7] It is unnecessary to parade the horrors which would follow from a ruling that the State was required to supply the names of all persons (The FBI man in charge of a prosecution witness's "rap sheet"?) who have knowledge of any facts in any way affecting the credibility of a potential witness.